906 F.2d 1059
 31 ERC 1977, 59 USLW 2095, 17
Fed.R.Serv.3d 134,
61 Ed. Law Rep. 448, 20 Envtl. L. Rep. 21,464
 DAYTON INDEPENDENT SCHOOL DISTRICT, et al., Plaintiffs,
v.
U.S. MINERAL PRODUCTS COMPANY, W.R. Grace & Co., and United
States Gypsum Co., Defendants.
COUNTY OF ORANGE, et al., Plaintiffs-Appellees,
v.
NATIONAL GYPSUM COMPANY, Defendant-Appellant.
DAYTON INDEPENDENT SCHOOL DISTRICT, et al., Plaintiffs-Appellees,
v.
U.S. MINERAL PRODUCTS, CO., et al., Defendants,
W.R. Grace & Company, Defendant-Appellant.
COUNTY OF ORANGE, et al., Plaintiffs-Appellees,
v.
NATIONAL GYPSUM CO., et al., Defendants,
W.R. Grace & Company, Defendant-Appellant.
DAYTON INDEPENDENT SCHOOL DISTRICT, et al., Plaintiffs-Appellees,
v.
U.S. MINERAL PRODUCTS CO., et al., Defendants,
United States Gypsum Company, Defendant-Appellant.
COUNTY OF ORANGE, et al., Plaintiffs-Appellees,
v.
NATIONAL GYPSUM CO., et al., Defendants,
United States Gypsum Company, Defendant-Appellant.
 Nos. 89-2529, 89-2733 and 89-2734.
 United States Court of Appeals,
Fifth Circuit.
 July 26, 1990.
Rehearing Denied in No. 89-2733
Aug. 28, 1990.
 
 Lawrence T. Hoyle, Jr., Denise D. Colliers, Charles B. Howland, Ralph A. Jacobs, Arlene Fickler, Hoyle, Morris & Kerr, Philadelphia, Pa., Harold H. Walker, Jr., Gardere & Wynne, Dallas, Tex., Patricia S. Greek, Andrews & Kurth, Houston, Tex., Walter J. Crawford, Wells, Peyton, Beard, Greenberg, Hunt & Crawford, Beaumont, Tex., Charles Dewey Cole, Jr., Meyer, Suozzi, English & Klein, P.C., A.W. Davis, Jr., Newton, Tex., Wendell C. Radford, Benckenstein, Oxford, Radford & Johnson, Beaumont, Tex., for Nat. Gypsum Co.
 Martin Dies, Mary Caroline Parker, Orange, Tex., A.W. Davis, Jr., Newton, Tex., for County of Orange, et al.
 Richard C. Hile, Tonahill, Hile, Leister & Jacobellis, Jasper, Tex., Ronald Scott, Robert B. Watts, Bracewell & Patterson, Houston, Tex., Martin Dies, Tonahill, Hile, Leister & Jacobellis, Beaumont, Tex., for Dayton Independent School Dist., et al.
 Patricia S. Greek, Andrews & Kurth, Houston, Tex., Charles D. Cole, Jr., Meyer, Suozzi, English & Klein, Mineola, N.Y., Edward H. Green, Weller, Wheelus & Green, Beaumont, Tex., Stephen S. Andrews, Woodward, Hall & Primm, Houston, Tex., John H. Lewis, Jr., Amelia C. Benton, Morgan, Lewis, & Bockius, Philadelphia, Pa., Walter J. Crawford, Jr., Wells, Peyton, Beard, Greenberg, Hunt & Crawford, Beaumont, Tex., for other interested party--W.R. Grace & Co.
 Edward H. Green, Beaumont, Tex., John H. Lewis, Jr., Amelia C. Benton, Morgan, Lewis & Bockius, Philadelphia, Pa., Weller, Whellus & Green, Beaumont, Tex., Stephen S. Andrews, Woodard, Hall & Primm, Houston, Tex., for other interested party--U.S. Gypsum Co.
 Benckenstein, Oxford, Radford & Johnson, Beaumont, Tex., for U.S. Mineral.
 Appeals from the United States District Court for the Eastern District of Texas.
 Before THORNBERRY, GEE and WILLIAMS, Circuit Judges.
 JERRE S. WILLIAMS, Circuit Judge:
 
 
 1
 Defendants in two consolidated asbestos removal cost recovery actions appeal from the district court's orders denying their motions to dismiss for lack of subject matter jurisdiction. They assert that plaintiffs-appellees have failed to state a claim upon which relief can be granted under Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. Sec. 9607(a). We find that Congress did not intend CERCLA to cover asbestos removal cost recovery actions. We vacate the district court's orders.
 
 I. Facts and Prior Proceedings
 
 2
 Appellee Dayton Independent School District filed a federal diversity suit in 1981, asserting state law tort claims against an asbestos manufacturer, appellant United States Gypsum Co. ("U.S. Gypsum"). Dayton Independent School District v. United States Gypsum Co. ("Dayton I "), 682 F.Supp. 1403 (E.D.Tex.1988). In that suit, Dayton sought to recover the costs of removing asbestos-containing ceiling and fireproofing products from various buildings. The case quickly exploded into a huge suit, eventually involving over 100 plaintiffs (mostly school districts) who asserted various claims against numerous asbestos manufacturers and suppliers. One of the added defendants was appellant W.R. Grace & Co.-Conn. ("Grace").
 
 
 3
 The parties to the Dayton I litigation all were diverse with the exception of one defendant, appellant National Gypsum Co. ("National Gypsum"), which was a citizen of Texas as were the plaintiffs. National Gypsum consequently was dismissed by the district court to maintain federal diversity jurisdiction.
 
 
 4
 In April 1986, National Gypsum once again was named in the Dayton I suit. In order to establish federal jurisdiction, since the presence of National Gypsum would destroy diversity, plaintiffs asserted a federal claim against National Gypsum under Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. Sec. 9607(a). National Gypsum moved to dismiss the CERCLA claims based upon lack of jurisdiction for failure to state a claim under CERCLA. When the district court denied National Gypsum's motion to dismiss, the company sought review in this Court by writ of mandamus. This Court denied the petition and held that National Gypsum first must seek certification from the district court in accordance with 28 U.S.C. Sec. 1292(b). When plaintiffs subsequently dropped their opposition to the motion, the district court granted National Gypsum's motion and dismissed National Gypsum again. In so doing, the court indicated that plaintiffs had failed to state a claim under CERCLA.
 
 
 5
 In April 1987, the district court severed from the Dayton I suit all of the claims asserted against one defendant, U.S. Mineral Products Company, because of issues unique to its case regarding whether any of the plaintiffs ever even used its products. This severed suit, Dayton Independent School District, et al. v. U.S. Mineral Products Co., et al. ("Dayton II "), is one of the two actions that form the basis for the instant appeal. The remaining defendants in Dayton I, including appellants W.R. Grace and U.S. Gypsum, entered into a settlement with the Dayton I plaintiffs. The district court granted final judgment, dismissing the Dayton I suit with prejudice.
 
 
 6
 In May 1988, Dayton II likewise mushroomed into massive litigation. Originally a suit by a subgroup of the Dayton I plaintiffs against U.S. Mineral Products, fifty-seven new plaintiffs intervened, bringing several new claims against new defendants. Among those newly joined as defendants were appellants Grace and United States Gypsum Co., both of whom had been party-defendants in Dayton I. All claims in this suit were based upon state law, and federal jurisdiction was based exclusively on diversity.
 
 
 7
 Also in May 1988, appellee County of Orange filed an original suit in federal court against appellant National Gypsum, the non-diverse defendant dismissed from Dayton I, asserting a cause of action under CERCLA. County of Orange v. National Gypsum Co., No. B-88-00429-CA (E.D.Tex.). This suit is the second action involved in this appeal. In the County of Orange action, the asserted application of the federal statute provided the sole basis for jurisdiction as both plaintiff and defendant were Texas citizens. Before appellant National Gypsum was served, an amended complaint was filed, naming six new plaintiffs who brought pendent state law claims against original defendant National Gypsum and against two new defendants, appellant Grace and appellant U.S. Gypsum. Soon thereafter, National Gypsum moved for dismissal of the County of Orange action, asserting a lack of subject matter jurisdiction, again based on plaintiffs' failure to state a claim under CERCLA and the lack of any other basis for jurisdiction. The district court denied the motion, but certified the order for interlocutory appeal pursuant to Sec. 1292(b).
 
 
 8
 The crowning glory in the complex history of this case came when the district court entered an order in January 1989 consolidating the Dayton II and County of Orange actions. The plaintiffs together filed a consolidated complaint, the "First Amended Original Consolidated Complaint". In the new complaint, all of the Dayton II and County of Orange plaintiffs added CERCLA claims against all of the defendants in their respective actions.
 
 
 9
 Additionally and significantly, in the new complaint, the Dayton II plaintiffs also asserted CERCLA claims against National Gypsum, which had not previously been named in the Dayton II suit.[1] The new presence in Dayton II of National Gypsum destroyed its previously valid diversity jurisdiction, leaving jurisdiction resting solely on the asserted federal claims under CERCLA. Consequently, appellant Grace filed a motion in district court to dismiss the entire consolidated complaint, claiming jurisdictional defect due to plaintiffs' failure to state a claim under CERCLA and the lack of subject matter jurisdiction based upon any other ground. Appellant United States Gypsum Co. joined in and adopted co-defendant Grace's motion. The motion was denied. The district court, however, also certified this order for interlocutory appeal. We initially denied Grace's motion to certify the additional question of whether the original County of Orange complaint properly was amended to add additional plaintiffs, diverse defendants, and state law claims if no CERCLA action exists. But we subsequently issued an order on September 19, 1989, that we would hear all issues material to the district court's order from which Grace's interlocutory appeal was taken.
 
 
 10
 This Court now faces the three consolidated interlocutory appeals brought by National Gypsum, W.R. Grace, and United States Gypsum. All three appeals raise the common question of whether plaintiffs can state a claim under CERCLA. Grace additionally challenges the district court's subject matter jurisdiction over both the Dayton II and County of Orange actions.
 
 
 11
 The complete stage for these appeals, however, has not yet been set. This Court also is confronted with a set of motions that a previous panel determined should be carried with the case. In November 1989, a few days after appellants had filed briefs on the merits of the interlocutory appeals, plaintiff-appellees moved in district court for leave to amend the first amended consolidated complaint. The district court granted this motion despite the fact that this Court had asserted appellate jurisdiction over part of the case. In their subsequent second amended consolidated complaint, all plaintiffs-appellees in both actions dropped all claims against the non-diverse National Gypsum, and dropped all claims against all defendants based upon CERCLA. Appellees now move this Court to dismiss the subject appeals as moot. U.S. Gypsum and National Gypsum have filed cross-motions for summary reversal, entry of judgment, and sanctions.
 
 
 12
 II. Mootness: "Going through the Motions "
 
 
 13
 The first issue that must be resolved in this case is whether the subject appeals have become moot in the light of the second amended consolidated complaint. In the second complaint, which was filed in district court after appellants had filed briefs on the merits of these appeals in this Court, plaintiffs-appellees dropped all CERCLA claims and dropped non-diverse National Gypsum from the consolidated actions in district court. The claim is that the amended complaint created or restored federal diversity jurisdiction in both actions.[2] Thus, subject matter jurisdiction no longer rests on plaintiffs-appellees' ability to establish federal question jurisdiction under CERCLA. They no longer pursue any CERCLA claims, nor do they assert any claims against any non-diverse parties. It is urged, therefore, that the appeals now have become moot.
 
 
 14
 Appellants National Gypsum and U.S. Gypsum oppose the motion. They strongly urge this Court to deny appellees' motion to dismiss the subject appeals because granting the motion would perpetuate "plaintiffs' recurring use of a contrived CERCLA claim to manufacture federal court jurisdiction". As evidence that appellees have only abandoned the CERCLA claims temporarily to escape appellate review, appellants point to appellees' contention on the merits of these appeals that they did state a valid claim under CERCLA.
 
 
 15
 While it appears that appellees have attempted to manipulate the court system to their best advantage, we do not find this argument persuasive. If the issue on appeal is moot, then regardless of the desirability of cutting short appellees' manipulations and resolving the substantive CERCLA issue at the appellate level, this Court does not have the power to address it.
 
 
 16
 Grace argues that the appeals are not moot because the district court did not have jurisdiction to grant appellees' motion for leave to amend their first amended consolidated complaint. The argument is persuasive. A "federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously." Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982). When one aspect of a case is before the appellate court on interlocutory review, the district court is divested of jurisdiction over that aspect of the case. Coastal Corp. v. Texas Eastern Corp., 869 F.2d 817, 820-21 (5th Cir.1989). A district court does not have the power to "alter the status of the case as it rests before the Court of Appeals". Id. By granting plaintiffs' motion to amend and drop all CERCLA claims and dismiss National Gypsum from the actions, the district court significantly changed the status of the appeals. It acted outside its authority.
 
 
 17
 Appellees counter with two Third Circuit cases stating that the rule that a trial court loses jurisdiction pending appeal is not jurisdictional but only a judge-made rule, designed to avoid confusion or a waste of time. See RCA Corp. v. Local 421, Intern. Federation of Prof., 700 F.2d 921, 924 (3d Cir.1983); United States v. Leppo, 634 F.2d 101, 104 (3d Cir.1980). It is urged that the rule should not be employed to defeat its purpose or to induce unnecessary paper shuffling. We need not consider the scope or extent of these two cases. We are bound by our well-established rulings that the district court loses jurisdiction over all matters which are validly on appeal. See Coastal Corp., supra, 869 F.2d at 820-21 and cases cited therein. This rule which we follow rigorously is based upon Griggs, supra, 459 U.S. 56, 103 S.Ct. 400. We find that the district court acted without jurisdiction in granting appellees leave to amend to drop the CERCLA claim and dismiss National Gypsum as defendant. The subject appeals therefore are not moot.[3] We deny appellees' motion to dismiss the appeals.
 
 III. Failure to State CERCLA Claim
 
 18
 We turn to the merits of the appeals. First, we must determine whether plaintiffs-appellees failed to state a claim upon which relief can be granted under Section 107(a) of CERCLA. Appellants urge that the district court's orders denying their motions to dismiss should be reversed or vacated because CERCLA does not provide a private right of action to recover the costs of removal of asbestos-containing materials from the structure of buildings.
 
 
 19
 Section 107(a) of CERCLA provides in relevant part:
 
 
 20
 (a) Covered persons; scope; recoverable costs and damages ...
 
 
 21
 Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section--
 
 
 22
 * * * * * *
 
 
 23
 (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances ...
 
 
 24
 * * * * * *
 
 
 25
 shall be liable for--
 
 
 26
 (A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;
 
 
 27
 (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;
 
 
 28
 * * * * * *
 
 
 29
 42 U.S.C. Sec. 9607(a).
 
 
 30
 Appellees claim that Section 107(a) grants them a private right of action against "generators" (suppliers and manufacturers) who "disposed" of the hazardous substance asbestos by placing it in the building materials installed in their buildings. Appellants concertedly contend, however, that the statute, legislative history, and case law all conclusively show that Congress never intended CERCLA to provide a right to recover the costs of asbestos removal.
 
 
 31
 We look to the statutory language first. The statute in terms provides that "any person ... who arranged the disposal ... of hazardous substances ... at a facility ... shall be liable" for the costs of removing the substance. It is not disputed that asbestos constitutes a "hazardous substance" within the meaning of the statute. Of greater concern are the terms "disposal" and "facility".
 
 
 32
 Congress adopted in CERCLA the definition of disposal set out in Section 1004 of the Solid Waste Disposal Act, 42 U.S.C. Sec. 6903(3). 42 U.S.C. Sec. 9601(29). In that statute, disposal is defined as
 
 
 33
 the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters.
 
 
 34
 42 U.S.C. Sec. 6903(3). Appellees insist that the sale of asbestos-containing building materials constitutes "disposal" within the meaning of the statute. In essence, they argue that the issue of disposal should be characterized as a factual issue to be determined on a case-by-case basis. Because the "disposal" of asbestos is a factual issue on which reasonable minds can differ, it contends that dismissal of the complaint for failure to state a cause of action would be premature and inappropriate.
 
 
 35
 Appellees undertake to turn dumping and disposal into building construction. We reject the contention. Under the applicable RCRA definition, or under even a broader general definition, there is no possible reasonable interpretation of the term "disposal" that could encompass the commercial sale of asbestos-containing useful building products by the defendant manufacturers and suppliers. "[T]he sale of a hazardous substance for a purpose other than its disposal does not expose defendant to CERCLA liability." See Prudential Ins. Co. of Am. v. United States Gypsum Co. 711 F.Supp. 1244, 1254 (D.N.J.1989); United States v. Westinghouse Electric Corp., 22 E.R.C. [BNA] 1230 (S.D.Ind.1983). The record is devoid of any substantive evidence that appellants merely characterized their activities as "sales" in order to cloak disposal activities. Instead, it is clear that appellants manufactured the asbestos-containing building materials for the primary purpose of creating a new useful and marketable product for the construction industry. Appellants' actions therefore cannot be considered "disposal" within the meaning of CERCLA.
 
 
 36
 Additionally, CERCLA holds liable only those defendants who arranged for the disposal of a hazardous substance "at a facility". 42 U.S.C. Sec. 9607(a). The statute provides:
 
 
 37
 (9) The term "facility" means (A) any building, structure, installation, equipment, pipe or pipeline ..., well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel.
 
 
 38
 42 U.S.C. Sec. 9601(9). The provision expressly exempts consumer products from the definition of facility for purposes of determining liability under the statute. 42 U.S.C. Sec. 9601(9). Appellants assert that this exemption applies to the "facility" into which they allegedly disposed of the asbestos--the building materials. Since the building materials are without a doubt consumer products, they cannot be held liable for disposing of asbestos "at a facility".
 
 
 39
 Appellees expend much wasted effort to show that the exemption does not apply because the "facilities" to be considered are the buildings in which the asbestos-containing materials were installed, and not the materials themselves. The provision exempting consumer products obviously was meant to protect from liability those who engage in production activities with a useful purpose, as opposed to those engaged in the disposal of hazardous substances.[4] It is clear that Congress did not intend CERCLA to target legitimate manufacturers or sellers of useful products. Rather, taken in context, the provision reflects Congress' desire to hold liable those who would attempt to dispose of hazardous wastes or substances under various deceptive guises in order to escape liability for their disposal.
 
 
 40
 The legislative history reinforces appellants' argument that Congress intended to provide recovery only for releases or threatened releases from inactive and abandoned waste sites, not releases from useful consumer products in the structure of buildings. The sale of asbestos-containing products for useful consumption is not the "arranging for disposal" of a hazardous substance at a "facility", Section 107(a) of CERCLA, that the statute is designed to combat.
 
 
 41
 The courts, without apparent exception, have concluded that CERCLA does not provide a remedy for asbestos removal. See First United Methodist Church of Hyattsville v. United States Gypsum Co., 882 F.2d 862, 867 (4th Cir.1989); Corp. of Mercer Univ. v. National Gypsum Co., No. 85-126-3-MAC, 1986 WL 12447 (M.D.Ga. order issued March 9, 1986); 3550 Stevens Creek Associates v. Barclays Bank of California, No. C-87-20672-RPA (N.D.Cal. order issued Sept. 28, 1988), appeal pending (9th Cir.); Prudential Ins. Co. of Am. v. United States Gypsum Co., 711 F.Supp. 1244 (D.N.J.1989); Retirement Community Developers, Inc. v. Merine, 713 F.Supp. 153 (D.Md.1989). We agree with the collective wisdom contained in these cases.
 
 
 42
 We note that appellees repeatedly have dropped, or have tried to drop, all CERCLA claims. If they really believed their claims were valid, they would be expected to persevere in the appellate courts. Their obvious and repeated avoidance of appellate review shows they too realize the statute means what it clearly says.
 
 
 43
 Based upon the language of the statute, its legislative history, and the relevant case law, we hold that Congress did not contemplate recovery under this statute of the costs incurred to effect asbestos removal from buildings. We conclude that appellees failed to state a claim upon which relief can be granted under Section 107(a) of CERCLA.
 
 
 44
 IV. Jurisdiction over the County of Orange Suit
 
 
 45
 Appellant Grace properly raises other jurisdictional claims.[5] With respect to the County of Orange suit, Grace contends that the district court should have dismissed the entire County of Orange action for lack of jurisdiction because it did not have either federal question or diversity jurisdiction over the case at its commencement. The original suit was a suit brought by a single plaintiff asserting a CERCLA claim against the non-diverse National Gypsum. Jurisdiction was predicated solely on the federal claim. Since plaintiff failed to state a claim under CERCLA, the entire suit should have been dismissed. Appellants urge that appellee County of Orange did not have standing to amend the original complaint, and therefore the district court erred in allowing it to amend to name new plaintiffs, defendants, and claims. See Summit Office Park, Inc. v. United States Steel Corp., 639 F.2d 1278, 1282 (5th Cir.1981).
 
 
 46
 Appellees argue to the contrary that Orange County was entitled as a matter of right to amend its complaint, pursuant to F.R.C.P. Rule 15(a), to add the new parties and state law claims. McLellan v. Mississippi Power & Light Company, 526 F.2d 870 (5th Cir.1976), mod. on other grounds, 545 F.2d 919 (5th Cir.1977) (en banc). In McLellan, this Court held that a plaintiff could amend his complaint under Rule 15(a) to add new claims and new defendants, thereby establishing jurisdiction despite the fact that the original defendant properly was dismissed for failure to state a federal claim against it.
 
 
 47
 Both appellants and appellees miss the critical point. Regardless of whether appellees possessed the right under F.R.C.P. Rule 15(a) to amend their original complaint to name new parties and claims, thereby creating jurisdiction, the amended complaint in this case did not accomplish that result. At no time since its inception has there been federal question or diversity jurisdiction in the County of Orange suit. It is well-established that the exercise of pendent jurisdiction over state law claims is proper only when there is a substantial federal question before the court. See Slaughter v. Allstate Ins. Co., 803 F.2d 857, 859 (5th Cir.1986); Hondo National Bank v. Gill Savings Ass'n., 696 F.2d 1095, 1102 (5th Cir.1983). Because appellees have failed to state a federal question, we decline to exercise jurisdiction over appellees' pendent state claims.
 
 
 48
 Appellees put forth the argument that their recent attempt to amend their complaint in district court in order to drop National Gypsum, which they claim was proper under F.R.C.P. 21, has had the effect of injecting valid diversity jurisdiction. But as we stated above, the district court lacked jurisdiction to change the status of the parties pending the disposition of this appeal. In the posture of the case before us, subject matter jurisdiction is lacking.
 
 
 49
 Appellees alternatively urge us to exercise our discretion in favor of allowing them, either here or on remand to the district court, to amend their complaint to dismiss National Gypsum, which would create diversity jurisdiction retroactively. While we have the discretionary power to grant the plaintiffs-appellees leave to amend in order to dismiss the non-diverse National Gypsum, see Newman-Green Inc. v. Alfonzo-Larrain, --- U.S. ----, 109 S.Ct. 2218, 2225-26, 104 L.Ed.2d 893 (1989), we decline to do so here. Plaintiffs-appellees attempted to bootstrap themselves into federal court by virtue of their invalid CERCLA claims. There is no justification to complicate this complex litigation further by allowing the entire nature of the case to be altered. We dismiss this case in its entirety.
 
 
 50
 It is also within our power to dismiss the entire Dayton II action for lack of jurisdiction as well. We do not choose, however, to take that course. In that action, the plaintiffs originally did have valid diversity jurisdiction, which was subsequently destroyed when they joined the CERCLA-National Gypsum bandwagon. Instead of dismissing the entire Dayton II suit, we recognize a right to litigate the issues raised by means of a diversity proceeding. So we dismiss defendant-appellant National Gypsum from the Dayton II action and restore diversity jurisdiction.
 
 
 51
 V. National Gypsum as an Indispensable Party
 
 
 52
 Finally, appellant Grace argues that the district court should have dismissed both the Dayton II and County of Orange cases in their entirety because National Gypsum is an indispensable party that cannot be dismissed to create or restore diversity jurisdiction. As we already dismiss the entire County of Orange action, we need only consider the argument with respect to the Dayton II action.
 
 
 53
 Under Rule 19(b) of the Federal Rules of Civil Procedure, in order to determine whether a party is indispensable to the action, a court must consider the following factors:
 
 
 54
 first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.
 
 
 55
 F.R.C.P. Rule 19(b).
 
 
 56
 With respect to the first two factors, the absence of National Gypsum would not be prejudicial to any of the parties nor to National Gypsum. If it is a joint tort-feasor, co-defendants can seek contribution and/or indemnity in state court, or perhaps even federal court if diverse. If it is the sole tort-feasor as to some claims, litigation of the remaining claims cannot prejudice National Gypsum or the other parties. Regarding the third factor, it is true that the judgment for those plaintiffs who have buildings for which National Gypsum is the sole alleged tort-feasor will not be "adequate". These plaintiffs, however, still have state court in which to bring their independent claims. Finally, we acknowledge that the plaintiffs would have what might be an adequate remedy in state court if we dismissed the action in its entirety. But, if we did so, claims against many parties which are properly in federal court would be dominated by a claim against just one of many alleged tort-feasors.
 
 
 57
 Having given these factors due consideration, we cannot conclude that National Gypsum is indispensable to the Dayton II action. In further support of our conclusion, we find it suggestive that the Dayton I plaintiffs and defendants, many of which are present in this case, did not consider National Gypsum indispensable to that litigation. There is no significant difference between the cases. It is true that National Gypsum's absence from that suit has created in part the morass that we face in this appeal, but that fact still does not render National Gypsum indispensable within the meaning of Rule 19.
 
 VI. Res Judicata Effect of Dayton I
 
 58
 Many of the plaintiffs involved in the Dayton II action were parties to the Dayton I litigation. We are concerned that these plaintiffs are attempting to take two bites out of the proverbial litigation apple by being involved in a suit against U.S. Gypsum and Grace. To the extent that they seek to relitigate claims already decided in the previous litigation, we find that those claims are res judicata. Due to the complexity of the action, and the attendant difficulty in ascertaining on appeal exactly which party is bringing which claim against which defendant, we leave it to the district court to sort out and dismiss those claims that have been adjudicated.
 
 VII. Conclusion
 
 59
 Appellees failed to state a claim upon which relief can be granted under Section 107(a) of CERCLA. We therefore vacate the district court's orders denying all three of appellants' motions to dismiss for failure to state a claim under CERCLA. The entire County of Orange action is dismissed for lack of subject matter jurisdiction. We dismiss National Gypsum from the Dayton II action, thereby restoring diversity jurisdiction, and affirm the refusal of the district court to dismiss that case. We remand Dayton II to the district court with instructions to consider and determine the res judicata effect of the Dayton I litigation and settlement on those parties present in both the Dayton I and Dayton II actions.
 
 
 60
 AFFIRMED IN PART VACATED IN PART AND REMANDED.
 
 
 
 [1]
 Approximately forty-two of the Dayton II plaintiffs that added CERCLA claims against National Gypsum were also party plaintiffs in Dayton I, in which the district court had already determined that the plaintiffs failed to state a claim against National Gypsum under CERCLA and dismissed National Gypsum from that suit. These plaintiffs in essence are attempting to relitigate an issue or claim already decided against them
 
 
 [2]
 Until plaintiffs' second amended complaint, the district court never had diversity jurisdiction over County of Orange because of the presence of the non-diverse National Gypsum at its inception. The dismissal of National Gypsum assertedly would "create" diversity jurisdiction retroactively. Jurisdiction in Dayton II, on the other hands, originally was based on diversity, which was then destroyed when National Gypsum was added by virtue of the first amended consolidated complaint. The dismissal of National Gypsum would operate to "restore" the previously valid diversity jurisdiction
 
 
 [3]
 Appellants National Gypsum and U.S. Gypsum filed cross-motions seeking sanctions against appellees for playing this "cat-and-mouse" game with them and the Court with respect to the CERCLA claims. While the appellees might have manipulated the court and defendants, and appellees' timing in filing its various amendments and motions has caused appellants to prepare for an appeal that appellees subsequently tried to make moot, we are not convinced that their actions warrant sanctions. Consolidated cases of this size and complexity are difficult to manage and control. We therefore cannot say that sanctions are appropriate at this juncture
 
 
 [4]
 One can properly argue that the buildings themselves, into which the asbestos-containing materials were installed, constitute "useful consumer products" within the meaning of the statute. School buildings and other community buildings are used daily by the public which they serve, just as the consuming public uses various movable goods or products
 
 
 [5]
 Appellees argue that Grace cannot raise these claims at this time because this Court cannot consider issues raised in another order of the district court which it has not certified for appeal. See Time v. Ragano, 427 F.2d 219, 221 (5th Cir.1970). In a previous order, however, this Court has already determined that it will consider "all issues material" to the subject order, even if it is not precisely the issue certified. The order from which Grace appeals is the district court's denial of Grace's motion to dismiss for lack of jurisdiction. Grace raises here the issue of jurisdictional defect, which is well within the scope of its original motion and the district court order