The COASTAL CORPORATION, A Delaware Corporation, and Colorado Interstate Corporation, A Delaware Corporation, Plaintiffs–Appellees,

v.

TEXAS EASTERN CORPORATION, A Delaware Corporation, I. David Bufkin, Dennis R. Hendrix and Henry H. King, Defendants–Appellants.

No. 89–2065.

United States Court of Appeals, Fifth Circuit.

March 29, 1989.

Charles Alan Wright, Austin, Tex., Ewing Werlein, Jr., Charles W. Schwartz, Vinson & Elkins, Houston, Tex., for defendants-appellants.

John L. Jeffers, G. Irvin Terrell, Baker & Botts, Houston, Tex., for plaintiffs-appellees.

Before GARZA, JOLLY and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

■ An injunction procured by material misrepresentation may not be sustained. The circumstances in this case demonstrate that Coastal has not sought equitable relief with clean hands. We therefore vacate the district court's injunction against the commencement of parallel litigation in any other court.

I.

On Friday, January 13, 1989, Coastal's management tentatively decided to embark on a hostile tender offer at $42 per share for Texas Eastern. Coastal immediately engaged the services of Skadden Arps, Slate, Meagher & Flom to assist with legal strategy. Coastal, through its counsel Skadden, Arps, filed a complaint against Texas Eastern in Delaware Chancery court at 5:04 p.m. the same day. The complaint was filed "under seal," allegedly to protect Coastal from premature leaks of the impending offer. That day, Coastal also retained the law firm of Baker & Botts. Baker & Botts was aware of the Delaware filing.

On Saturday, January 14, Coastal's board met, discussed and approved the tender offer. The next day Coastal filed the instant complaint in federal district court, seeking to enjoin Texas Eastern from raising any legal challenges to Coastal's tender offer outside the Southern District of Texas. Coastal also sought to enjoin Texas Eastern from implementing its Shareholder Rights Plan ("poison pill") or invoking the protection of 8 Del.Code § 203. Finally, Coastal sought a declaratory judgment that each one of Texas Eastern's anticipated defenses to the tender offer was invalid.[1] It is significant that injunctive and declaratory relief were the only remedies sought by Coastal, because neither of these remedies may be automatically granted by a federal court. The judicial basis for such remedies is narrow, as comports with the demands of equity and—where state proceedings of some kind are possible—federalism.

Coastal requested a temporary restraining order against Texas Eastern the night of Sunday January 15. The district court granted this request *ex parte*, and, after hearing arguments of counsel the next day (no evidence was offered), extended its initial order as a preliminary injunction against the instigation by either party of litigation relating to the tender offer without leave of the district court. During the colloquy on Monday, the court asked counsel for Coastal whether any litigation was pending elsewhere between the parties; counsel flatly denied that any such litigation existed.

Coastal's counsel did not reveal that the "secret complaint" had been filed in Delaware to secure that forum for adjudication of Texas Eastern's poison pill and other state law defenses. The omission is alleged to be both inadvertent and irrelevant—inadvertent because of the highly dubious contention that counsel misunderstood the district court's question; and irrelevant because Coastal's president had already made a command decision to drop the "secret suit" as soon as possible in favor of litigating in a Texas federal court.

The "secret complaint" was indeed dismissed unilaterally by Coastal at 8:34 a.m. on Tuesday, without notification to Texas Eastern that it existed and after Coastal had procured an injunction suitable to its purpose from the federal district court. The filing was revealed during document discovery several weeks later, when, according to Texas Eastern, the "secret com-

1. Specifically, Coastal sought a declaratory judgment that: (1) Coastal's Schedule 14D–1 was in compliance with all applicable legal requirements, (2) Coastal's tender offer was in full compliance with the Williams Act and was not materially inaccurate or incomplete, (3) Coast-

al's purchase of Texas Eastern's stock did not violate either federal or state antitrust laws, and (4) Coastal's tender would "not violate any other applicable law, regulation, decree, judgment, order, or agreement."

plaint" was discovered shuffled among Coastal documents dated in 1983.

The district court granted its preliminary injunction in favor of Coastal on January 16, 1989. Texas Eastern subsequently filed an appeal of the order with this court. We granted an expedited appeal and heard arguments in this case on February 6, 1989. The case was initially briefed and argued by Coastal as if no "secret complaint" had ever existed. While this appeal was before us, both we and the district court were informed by Texas Eastern of the just-disclosed Delaware complaint. On February 20, 1989 the district court sua sponte dissolved the preliminary injunction.

## II.

Coastal first challenges our jurisdiction to consider the propriety of the preliminary injunction, because the district court's subsequent dissolution of the injunction moots the issue before us. In response, Texas Eastern contends that the district court lacked jurisdiction to dissolve its injunction once the issue of its validity has been appealed. Coastal's claim is not frivolous, and we must first determine whether we can thread our way through an imposing thicket of jurisdictional thorns.

■ The law of this circuit, standing alone, does not completely remove us from the bramblebushes. As a general rule, a notice of appeal ousts the district court of jurisdiction over the judgment or order appealed. *U.S. v. Hitchmon*, 587 F.2d 1357 (5th Cir.1979); *accord Henry v. Independent American Savings Ass'n*, 857 F.2d 995 (5th Cir.1988). Thus it may be that the district court lacked jurisdiction to dissolve its injunction, once appealed, without leave of this court. Our circuit has not, however, specifically addressed the scope of the district court's jurisdiction over its injunction while it is on appeal.

The concurring opinion in *Hitchmon* noted the exception to this rule which would allow a district judge to retain jurisdiction for purposes of granting or modifying an injunction subsequent to the filing of an appeal of the injunction. *U.S. v. Hitchmon*, 587 F.2d at 1362 (Higginbotham, J.

concurring) (citing 9 J. Moore, Moore's Federal Practice § 203.11 (1974)). In fact, Fed. R.Civ.P. 62(c) does allow the district court some limited injunctive powers during the pendency of an appeal. Our task is to define the boundaries of this power.

Nor does Fed.R.Civ.P. 62 speak clearly to the district court's continuing jurisdiction. Rule 62(c) provides in pertinent part:

(c) **Injunction Pending Appeal.** When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.

The rule authorizes the suspension, modification, restoration or grant of injunction, not the dissolution of an injunction already granted. Arguably, the term "modify" might be seen as encompassing a dissolution. Yet if that were the case, the terms "suspend" and "restore" would be superfluous. The omission of "dissolutions" appears to indicate a limit on the district court's power to modify an injunction pending appeal, where the effect of its order would be to oust the appellate court's jurisdiction. The use of the word "suspend" rather than "dissolve" in this portion of the Rule further suggests that the district court's power does not extend so far. The drafters were obviously aware of the distinction between a suspension and a dissolution, as they had spoken to dissolutions just one line before.

Several circuits have held, or at least strongly implied, that the district court may not alter the injunction once an appeal has been filed except to maintain the status quo of the parties pending the appeal. *Flynt Distributing Co., Inc. v. Harvey*, 734 F.2d 1389, 1392 n. 1 (9th Cir.1984); *Lewis v. Tobacco Worker's Internat'l Union*, 577 F.2d 1135 (4th Cir.1978); *Ideal Toy Corp. v. Sayco Doll Corp.*, 302 F.2d 623 (2nd Cir.1962).

Under the Second Circuit's *Sayco* doctrine, once the injunction has been appealed the district court lacks jurisdiction "to tamper in any way with the order then on interlocutory appeal other than to issue orders designed to preserve the status quo of the case as it sat before the court of appeals." For example, a district court cannot generally accept new evidence or arguments on the injunction while the validity of the injunction is on appeal. *State of New York v. Nuclear Reg. Com'n.*, 550 F.2d 745, 758 (2nd Cir.1977). *Sayco* itself involved a motion to vacate an injunction based on new evidence brought before the district court while the validity of the injunction was on appeal. The *Sayco* doctrine does not provide the clearest guidance to district courts, however, because the doctrine itself appears to recognize an exception for cases in which the "[district] judge is satisfied that his order was erroneous." *Sayco*, 302 F.2d at 625. If, however, the general rule in *Sayco* is to have any substance, this exception must be read to restrict modifications to those which stop short of dissolving the injunction or those which do not, in any event, alter the status of the case as it rests before the court of appeals.

The common sense appeal of *Sayco* was recently demonstrated in *International Ass'n of Machinists v. Eastern Airlines*, 847 F.2d 1014 (2nd Cir.1988). That case presented the inverse scenario. The federal district court denied the injunction, and its decision was appealed. While on appeal, the district court granted the injunction based on new facts which had come to light. The Second Circuit held that it maintained jurisdiction over the appeal and that the district court lacked authority to exercise injunctive power which would alter the status quo. Rather, any new request for a temporary injunction, the court held, would have to be made to the court of appeals.

The Fourth Circuit's position is unequivocal. It held in *Lewis v. Tobacco Worker's Int'l Union*, 577 F.2d 1135 (4th Cir.1978), that Rule 62(c) is applicable only when necessary to secure the rights of the party adversely affected by the injunction. Absent such circumstances, once a party has filed an appeal of a district court's order granting an injunction, the district court no longer has any authority to amend or vacate the order.

■ Having reviewed the existing case law throughout the circuits and paying proper respect to Rule 62(c), we are persuaded that the powers of the district court over an injunction pending appeal should be limited to maintaining the status quo and ought not to extend to the point that the district court can divest the court of appeals from jurisdiction while the issue is before us on appeal.

Such a rule is consistent with the view set forth in *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982). In *Griggs*, a federal district court granted a motion for summary judgment. The respondent timely filed a Rule 59 motion to alter or amend the court's judgment. While this second motion was still pending, the respondent also filed a notice of appeal with the court of appeals. The district court subsequently denied the respondent's Rule 59 motion. The Third Circuit accepted jurisdiction over the appeal, but the Supreme Court reversed, holding that Fed.R.App.P. 4(a)(4) provides that a notice of appeal filed before the disposition of a Rule 59 motion can have no effect; the appeal is effectively voided.

The Court noted that under most circumstances "a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously." *Griggs*, 459 U.S. at 58, 103 S.Ct. at 402. The court went on to say:

The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.

*Id.*

Our decision in this case is further bolstered by our order in this case staying the district court's injunction. In this case, the district court's action was unnecessary to maintain the status quo between the par-

ties in light of our stay of the injunction pending our decision on appeal.

Since we have determined that the district court lacked authority to dissolve the injunction, Coastal's second challenge to our jurisdiction—that the case is now moot —must also fail. We now proceed to consider the validity of the injunction.

## III.

We cannot overlook the strategic results behind Coastal's *contended* misapprehension of the district court's pointed inquiry about pending litigation and its failure on Sunday night or at the Monday hearing to acknowledge the prior pending litigation. Had Coastal informed the district court of its Delaware filing, the Anti–Injunction Act, 28 U.S.C. § 2283,[2] would have prevented the district court from issuing an injunction against pending state court litigation. Our court has also held that a declaratory judgment may not be issued when its sole purpose is to interfere with ongoing state proceedings. *TEIA v. Jackson*, 862 F.2d 491 (5th Cir.1988) (en banc). *Accord, New Orleans Public Service, Inc. v. Majoue*, 802 F.2d 166, 168 (5th Cir.1986) ("[t]he wholesome purposes of declaratory acts would be aborted by its [sic] use as an instrument of procedural fencing ... to choose a forum.") (citations omitted).

Moreover, even if the Anti–Injunction Statute were inapplicable for some reason, such as Coastal's declaration that it did not

intend to proceed with the Delaware case and would dismiss it immediately, the prior filing of that case would have cast serious doubt on the propriety of equitable relief. Coastal introduced no evidence to support its request for an injunction. Instead, it averred, and the district court found, that it was necessary to litigate in one forum because litigation in multiple courts would cause Coastal "irreparable injury." This finding would be difficult to sustain against Coastal's admission that it had already initiated multiple litigation in order to secure a Delaware forum for the parties' state law issues.

By not admitting that it commenced a prior state court lawsuit, Coastal maintained its strongest possible case for injunctive relief. Moreover, had the district court rejected Coastal's requested TRO or preliminary injunction or dismissed the case, Coastal could immediately serve the Delaware complaint. This amounts to a "heads I win, tails you lose" forum-shopping strategy against Texas Eastern pursued at the expense of candor before the district court.

Coastal has repeatedly and vigorously impugned Texas Eastern's alleged motives to delay the tender offer by pursuing multiple litigation, but Coastal appears to have manipulated state and federal court dockets to secure a favorable forum. Even if the district court's jurisdiction was correctly invoked,[3] we should not allow the is-

---

2. The Anti–Injunction Act, 28 U.S.C. § 2283 provides:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

The exceptions in this section are "narrow and are 'not [to] be enlarged by loose statutory construction.'" *Texas Employers' Ins. Ass'n v. Jackson*, 862 F.2d 491 (5th Cir.1988) (en banc) (citations omitted). Any injunction against a state court proceeding must find authority in one of these exceptions. *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970). We find none of the exceptions applicable in this case. The action of the district court cannot plausibly be said to be "necessary in aid of its jurisdiction."

3. The jurisdictional issues raised by Texas Eastern are not without substance. Texas Eastern contends that Coastal's filing on January 15 constituted a forum-shopping abuse of the declaratory judgment process, *see New Orleans Public Service, Inc. v. Majoue, supra*, and that Coastal presented no justiciable case or controversy for several reasons: (1) Coastal had not then filed its Williams Act disclosure statement with the SEC or court, so it could not identify a federal securities law dispute; (2) there was no indication that Texas Eastern would oppose the tender offer as contrary to federal antitrust laws; and (3) the various state law claims, which constitute the core of this case are, with one exception, not within the court's federal question jurisdiction. The only claim arguably raising more than a speculative controversy on January 15 was Coastal's contention that § 203 of the Delaware Code conflicts with the Constitution's Supremacy and Commerce Clauses.

suance of injunctive relief where the movant has not represented its material litigating posture fully and accurately to the district court. The issue of Coastal's clean hands <u>alone</u> is sufficiently <u>telling</u> to warrant our vacating the preliminary injunction. <u>In any event,</u> the balance of equities does not <u>support</u> Coastal's position that it is more seriously harmed than is its adversary by the pendency of litigation in Texas and Delaware. *See Canal Auth. of Florida v. Callaway,* 489 F.2d 567 (5th Cir. 1974) (criteria for award of an injunction include the movant's showing that it suffers a greater threat of injury if the injunction is denied than the threat of injury to the defendant if it is granted).

## CONCLUSION

Both our Court and the district court have expended enormous effort on this case which, even in its "unblemished" form, raises difficult issues. There should be no doubt that Coastal's lack of candor has made our task both redundant and more difficult.

The injunction is VACATED and the cause REMANDED for further proceedings consistent herewith.

Texas Eastern did not raise or brief the further possibility that the court had no independent federal jurisdiction over the Williams Act claim or the § 203 preemption question because they were raised in anticipation that they would be defenses to the tender offer. In this regard, Coastal's pleading would seem to raise an elementary "well-pleaded complaint" problem. *See, e.g., Willy v. Coastal Corp.,* 855 F.2d 1160 (5th Cir.1988); *see also TEIA v. Jackson,* 820 F.2d 1406 (5th Cir.1987) (Jones, J., dissenting); *Lowe v. Ingalls Shipbuilding,* 723 F.2d 1173 (5th Cir.1984). *See also* 13B C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3566, 94–103 (2d ed.1984). We are not satisfied that the parties have briefed these issues adequately in our Court. We find it unnecessary to address the district court's jurisdiction at the outset of the case, however, for two reasons. First, our vacating of its preliminary injunction on the merits reaches the same result as would a jurisdictional ruling: a denial of relief for Coastal. *Cf. Texas Employers Ins. Ass'n v. Jackson,* 862 F.2d 491, 497 n. 8 (5th Cir.1988) (*en banc*) (citing Supreme Court authorities). Second, Coastal's amended complaint filed on January 31 conferred jurisdiction on the district court at least from thence forward because it alleged that Texas Eastern had issued press releases that violated the Williams Act in the manner of their opposition to the tender offer. The alleged violations, undoubtedly raising a colorable federal question claim, occurred after the court's grant of a preliminary injunction. The district court now has jurisdiction over whatever case remains, and we may pretermit the difficult question of its jurisdiction on January 15 and 16, when the case was initiated and the preliminary injunction granted.